UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARON ABRAMS,<br>          Plaintiff<br><br>vs.<br><br>ALBANY AQUA DUCKS, INC.,<br>NATIONAL UNION FIRE INSURANCE<br>COMPANY OF PITTSBURGH PENNSYLVANIA<br><br><br>          Defendants | CIVIL ACTION<br>NO. |

## PLAINTIFF'S COMPLAINT

### INTRODUCTION

The Plaintiff Sharon Abrams (hereinafter "Abrams") was a passenger on board the *I Emma Duck* duck boat owned by the defendant Albany Aqua Ducks Inc.(hereinafter "Albany") and captained by Richard Powell in July 2011. The vessel descended the ramp in Albany into the Hudson River at too great a speed for the conditions existing which caused Abrams to be thrown headlong in to a metal bulkhead causing facial injuries and a traumatic brain injury. Previously employed in an office environment, she has never returned to gainful employment.

### PARTIES

1. The Plaintiff, Sharon Abrams, is a resident of the City of Gloucester, County of Essex, Commonwealth of Massachusetts.

2. The Defendant, Albany Aqua Ducks, Inc., is a New York Domestic Business Corporation with a principal place of business at 1 Quay Street in

1

Albany, New York 12207, with a mail process address listed at the NYS Department of State Division of Corporations at ALBANY AQUA DUCKS,INC., PO BOX 446, ALBANY, N.Y. 12201 .

3. The Defendant, National Union Fire Insurance Company of Pittsburgh Pennsylvania (hereinafter "National") is a Pennsylvania Corporation with a principal place of business in Pittsburgh, Pennsylvania.

## JURISDICTION

3. Subject matter jurisdiction is based on diversity of citizenship and an amount in controversy in excess of $75,000.
4. Personal jurisdiction is satisfied as at all times relevant, Albany advertised on the internet and actively sought review under national travel websites such as Yelp, Twitter and Wizardweb thereby extending the basis for personal jurisdiction to Massachusetts
5. National sold insurance policies and provided coverage to entities such as Albany throughout the nation including New England and New York.
6. Venue lies within this District under the provisions of 28 U.S.C. s.1391 as all the medical treatment costing over $67,000 of Abrams (except the first evaluation following the incident in Ablany) has been provided in Massachusetts. Accordingly, Massachusetts is the location where a substantial part of the events giving rise to the claim took place.

## FACTS

7. During the late morning on July 18, 2011, Abrams, her son and mother boarded Albany's vessel *I Emma Duck* for the purpose of a duck tour on the Hudson River in Albany, New York.
8. At that time, the vessel was being operated by Captain, Richard Powell.
9. The tide on the river at the time was completely low shortly after the trip began. This low water condition permitted the vessel to gain maximum speed down the ramp before striking the water.
10. The guide (Defendant's employee) on the vessel was responsible for

providing a brief safety lecture as the trip began. As the vessel approached the water, the guide began an additional brief safety lecture.

11. At that time, Abrams and her son were seated in the very front seat which had no seat in front of it on which to brace oneself.

12. As the vessel, violently, hit the water with great force, Abrams was propelled forward while struggling to hold onto her son.

13. In the course of Abrams being thrown forward, she tripped over a large metal rail stowed by the vessel's crew in front of her seat.

14. Abrams, at all times, was facing the guide during the start of the safety briefing.

15. At no time was Abrams directed by the guide or Captain, to move to a seat other than the front unguarded seat of Albany's vessel.

16. The vessel provides no school bus like compartment or restraint guard for passengers in the front row.

## COUNT I

### Negligence- Albany

### 46 CFR 185.100, 46 CFR 185.304

17. Abrams restates and incorporates herein Paragraphs 1 through 16 above.

18. Albany owed Abrams a duty to exercise the degree of care (set forth in CFR's noted above) in its operation of the vessel in order to prevent injuries to passengers.

19. Albany breached its duty to Abrams before, during and after its operation of the vessel and was, therefore, negligent, by committing the following acts or omissions:

   a. Albany and its employees negligently failed to create and maintain a safe seating procedure on the vessel for its passengers;

   b. Albany and its employees negligently failed to keep the vessel for the use of its passengers, including Abrams, in a reasonably safe condition;

   c. Albany and its employees negligently failed to warn the

passengers, including Abrams, of the dangerous condition of the vessel;

d. Albany and its employees negligently failed to inspect said Vessel for dangerous conditions and operated said vessel in a manner not providing adequate protection for passengers such as Abrams;

e. Albany and its employees negligently failed to remedy the dangerous condition when they knew, or in the exercise of reasonable care, should have known that such condition greatly increased the risk that passengers, including Abrams, would have been injured;

f. Albany failed to have adequate medical supplies on board to address Abrams visible injuries after the incident as set forth in 46 CFR §160.041-1 pertaining to first aid kits

g. Albany failed to accurately record the pertinent facts of the incident as required in Notice of Casualty 46 CFR §185.202 (6)

20. Albany's negligence was the direct and proximate cause of the incident described herein and the concomitant damage suffered by Abrams.

21. As a result thereof, Abrams was caused serious injuries, incurred medical bills (over $67,000.), lost wages presently valued at $44,000 and continuing and also incurred litigation expenses. Abrams's injuries have caused her to suffer and has interfered with her normal and usual activities.

**WHEREFORE**, the Plaintiff, Sharon Abrams, demands judgment against Albany for all damages and for such other relief this Honorable Court deems necessary and in the interest of justice.

## COUNT II

### CHAPTER 93A/176D
National Union Fire Insurance of Pittsburg Pennsylvania

22. Abrams repeats the allegations of Paragraphs 1 through 21 as if expressly set forth herein.

4

23. At all times relevant, National has been engaged in trade and commerce.

24. Abrams submitted a demand for settlement to National, via a certified letter, pursuant to MGL c. 93A § 9 dated March 5, 2014. (As set forth in Exhibit "A")

25. At all times relevant, National is subject to and has committed various violations of MGL, Chapter 93A, §'s 2 & 9 involving MGL c. 176D § 3 (9) et al. (as set forth in Exhibit A).

26. At all times relevant, National has committed various violations of state law as set forth in Exhibit "A" and violations of the Code of Federal Regulations as set forth in Count I above, which can be a per se violation of Chapter 93A.

27. National forwarded a response on March 31, 2014, in which no further offer of settlement was provided.

28. Abrams maintains that National through its employees have either negligently or intentionally:  (a) Violated statutory sections of MGL c. 176D §3 (9) and Code of Federal Regulations pertaining to Shipping as will be established at trial.

29. Said unfair and deceptive acts and practices were a substantial contributing cause of ongoing harm to Abrams.

**WHEREFORE**, the plaintiff, Sharon Abrams, demands judgment against the defendant, National, in an amount to be determined by the court, with double or treble damages based on willful or reckless conduct with interest, costs and reasonable attorney's fees.

**PLAINTIFF DEMANDS A TRIAL BY JURY**.

                    Plaintiff,
                    By her attorney,

                    /s/ Paul L. Lees

                    Paul L. Lees, Esq.
                    BBO # 556440
                    Lees Law Office
                    46 Middle Street
                    Gloucester, MA 01930
                    (978) 281-0777
                    FAX: (978) 281-4484
                    Leeslaw@verizon.net

Dated: 4/18/2014

### Certificate of Service

I, Paul L. Lees, attorney for the Plaintiff, Sharon Abrams, in the above entitled action certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent, via First Class Certified Mail, to those indicated as non- registered participants on this 18th day of April 2014.

                    /s/Paul L. Lees



# LEES LAW OFFICE
46 MIDDLE STREET
GLOUCESTER, MASSACHUSETTS 01930
(978) 281-0777
Fax: (978) 281-4484
Cell: (508) 284-3967
Email: Leeslaw@verizon.net

Proctor in Admiralty

Satellite Offices:
Salem
New Bedford
1(877) Lees Law

March 5, 2014

*Via Certified Mail –7012 2210 0001 6498 9862*
*Return Receipt Requested*

Mr. Brian Morrissey
AVP, Regional Claims Manager
Chartis Marine Adjusters
99 High Street, 29th Floor
Boston, MA 02110

RE: Our Client: Sharon Abrams
 Your Insured: Albany Aqua Ducks
 Date of Accident: 7/18/11
 Claim Number: 003219

## M.G.L. c.93A DEMAND LETTER

Dear Mr. Morrissey:

The purpose of this letter is to set forth a formal demand for settlement under MGL c. 93A and MGL c. 176 D. §3 (9) (f) on behalf of Sharon Abrams regarding the incident of July 18, 2011. A multi- page settlement letter with supporting documents was sent to you via certified mail on August 30, 2013. In response, you sent a seven line email on November 15, 2013 in which you made an offer of $5,000 in response to the demand of $1,200,000 for traumatic brain injury. The settlement letter identified total wage loss at $592,000, medical billing at $67,000 and out of pocket expenditures at $22,000 for a total of just over $681,000 in special damages. Since your email, there has been no further communication from you.

1

Exhibit "A"

We maintain that your handling of this claim is in violation of M.G.L. c.93A, §2, 9 and 11 the **Massachusetts Consumer Protection Statute** and M.G.L. c.176D, §3(9)(f) We maintain your company has failed to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. As you are aware, M.G.L. c.93A is a consumer protection statute. It proscribes unfair and deceptive acts and practices conducted by businesses and, more specifically, insurance companies with regard to c.176D, §3(9). In the context of this letter, the words "you" and "your" includes the underwriter National Union Fire Insurance Company of Pittsburgh, Pennsylvania. Please forward a copy of this letter to the underwriter.

A review of relevant case law interpreting this statute is appropriate. The underwriter on this case, National Union and Fire Insurance Company of Pittsburgh Pennsylvania is <u>very</u> familiar with the case of **Rhodes v. AIG Domestic Claims, Inc. et al**, 78 Mass App Ct 299 (2010) which provides:

"*The legislature has placed the duty on the insurer to effectuate settlements by proceeding promptly with a reasonable settlement offer, thereby reducing the uncertainties and frustrations that inevitably follow from needless delay and the complication of litigation.*" Id. at 310.

With respect to the obligations on the insurance company, Rhodes provides:

"*The applicable statutes were enacted to prevent the harmful effect on the claimant and the settlement process when the claimant's demand for settlement of a meritorious claim goes unanswered.*" Id. at 309.

Your office failed to respond for over 60 days with an offer of settlement and when it did respond, the $5,000 offer was the equivalent of this meritorious claim going "unanswered". The statute requires a reasonable response within 30 days or as soon as practicable thereafter.

"*Together, the statutes require an insurer….promptly to put a fair and reasonable offer on the table when liability and damages become clear, either within the thirty-day period set forth in G.L. c. 93A s. 9 (3), or as soon thereafter as liability and damages makes themselves apparent*". Id. at 305,306 citing Bobick v. United States Fid.& Guar. Co., 439 Mass. 652, 659 (2003)

The medicals and out of pockets in Rhodes came to $2,800,000 and the last minute offer just before trial was $3,500,000. The jury came back with a verdict in favor of the plaintiffs and judgment was entered in the amount of 11.3 million. Id. at 303. This resulted in findings by the trial court, Appeals Court and the Massachusetts Supreme Judicial Court that the insurers conduct was an intentional violation of the statutes. Id. at 302,303, 311. The matter was remanded for a determination of whether the damages should be doubled or trebled. Id. at 313.

In this matter, we have specials of $680,000 and an offer of $5,000 which is far more egregious than the facts of Rhodes set forth above. In your email of September 13, 2013 you write "As far as we are concerned your demand of 1.2 M is a non-starter". To the extent you believe the demand is excessive, the Rhodes decision cites Bobick to address that issue.

"Excessive demands on the part of a claimant …do not relieve an insurer of its statutory duty to extend a prompt and equitable offer of settlement once liability and damages are reasonable clear." Rhodes at 306 citing Bobick at 662.

You cannot maintain an excessive demand sets your duty aside. In my email to you on September 13, 2013 in reply to your email quoted above, I wrote "the size of a demand has no impact on an insurer's obligations under c. 176D s. 3 (9) and you know that." Not only are you aware of this fact, but the underwriter is keenly aware of the two Rhodes appellate decisions.

Rhodes also states that "Our analysis is informed by the purpose of the statutory scheme, which is not to require the insurer to extend an initial offer that must be accepted by the claimant but, rather, to initiate the process of settlement negotiations promptly and thereby facilitate out-of-court resolution." Id. at 309 The insurer is not required to set forth its final offer but one that is within the bounds of reasonableness. Id. There is no way it can be stated with sincerity that a $5,000 offer even approaches the scope of reasonableness. The medical billing and out of pockets was $ 89,000 at the time of the settlement letter which is over 6 months ago. It is safe to presume the medicals and out of pockets are close to $100,000 at this time. Your duty under the statute will be scrutinized by focusing on these numbers as well. Admittedly, the negotiation process requires back and forth movement of settlement positions. We maintain an absolute prerequisite for that is the insurer's obligation to set forth a reasonable offer based on the available information. Rhodes provides "Ordinary give and take would suggest that both would and should move. Id. at 309, citing Forcucci v. United States Fid. & Guar. Co., 11 F.3d 1,2 (1 st Cir. 1993) Please note that the plaintiffs in Rhodes did not even counter offer from their demand of 16.5 million when offered 2 million as it was deemed wholly inadequate. We also have not changed our demand from 1.2 million for the same reasons.

The law requires under M.G.L. c.93A that we set forth the manner in which your conduct has harmed Sharon Abrams. The court in Rhodes also made specific mention of the plaintiffs "emotional distress from the uncertainties and frustrations of litigation" Id. at 306 Rhodes talks about the harmful emotional effect on a claimant and in this case we have an individual with a **traumatic brain injury**. The harmful effect on Ms. Abrams as she struggles with her disability is just enormous. The failure to comply with the statute is further harming Ms. Abrams and her family due to the lack of income her injury has caused. She has not returned to gainful

3

employment. She has a young family and her oldest is a daughter, almost a teen, who struggles to take on responsibilities typically handled by parents. Your insured's negligence caused this injury and resulting effects on this young family. Your conduct in handling this claim is in violation of 176Ds.3 (9) and further exacerbates the plaintiff's injuries and harm.

A further harm caused by your company's failure to comply with the statutes is the costs of litigation which are imminent. In just over five months, the statute of limitations will toll which means Ms. Abrams has no choice at this point but to file suit. On October 11, 2013, over 30 days after the settlement demand was sent to you, I asked in an email for the courtesy of a formal reply. I followed up to you on November 13, 2013 email stating that having provided further documents your requested, will there be an offer of settlement forthcoming? To this inquiry I received your seven line email attached as Exhibit A with no formal reply.

Next, as you are aware, the law requires that you provide a reasonable response in writing within 30 days to this demand. Please be sure to have your supervisor and the underwriter review this demand letter. It is an unfair claims settlement practice to expose an insured to a verdict in excess of the insurance coverage. If we secure a verdict in excess of the coverage, we will collect the balance from your insured personally.

Lastly, the failure to provide a reasonable response in writing within 30 days may subject you to an award of treble damages, reasonable attorney's fees and costs associated with bringing the litigation. In this context, we will file suit against your insured, Chartis Marine Adjusters as well the underwriter National Union Fire Insurance Company of Pittsburgh Pennsylvania. The 2012 decision of Rhodes et al v. AIG Domestic Claims, 461 Mass. 486 (2012) reflects the Massachusetts Supreme Judicial Courts recognition that the doubling or trebling of a Judgment on a jury verdict is appropriate based on intentional violations of c. 176D s. 3 (9) under 93A. It is not the loss of the use of the money but rather the full Judgment which may be doubled or trebled! Our demand remains 1.2 million dollars to settle this case.

I call upon you and Chartis as well as the underwriter to conduct yourselves in good faith and in compliance with c. 176D s. 3 (9).

Very truly yours,

*[signature]*

Paul L. Lees
Enclosure

4

Paul L. Lees

**From:** Morrissey, Brian@Boston <Brian.Morrissey@AIG.com>
**Sent:** Friday, November 15, 2013 2:03 PM
**To:** 'Paul L. Lees'
**Cc:** CMADropFile
**Subject:** RE: Sharon Abrams v. Albany Aqua Ducks 003219

Dear Paul

In order for us to properly evaluate Ms. Abrams claim since it is based almost entirely on your client's subjective medical complaints as well her long history of pre-existing anxiety and mood disorders, we will require an IME of your client. Since our request has been previously rejected by your office and our insured's liability is far from "reasonably clear", we see this claim as a low exposure case and so are prepared to vigorously defend our insured in case a lawsuit is filed. For the record, we will make a settlement offer of $5,000 in response to your demand of $1,200,000.

However, if you would agree to have your client examined so that we may obtain an objective medical opinion, we will reevaluate our current position. Please contact me if you have changed your position regarding the IME Thank you

Regards

Brian G Morrissey, AIC

AIG Marine Adjusters

**From:** Paul L. Lees [mailto:leeslaw@verizon.net]
**Sent:** Wednesday, November 13, 2013 2:24 PM
**To:** Morrissey, Brian@Boston
**Subject:** RE: Sharon Abrams v. Albany Aqua Ducks 003219

Dear Brian: My file reflects having provided the documents you requested. Will there be an offer of settlement coming soon?

Paul L. Lees, Esq.
Lees Law Office
46 Middle Street
Gloucester, MA 01930
(978) 281-0777 voice
(978) 281-4484 fax
(508) 284-3967 cell
Leeslaw@verizon.net

This message and the documents attached to it, if any, are intended only for the use of the addressee and may contain information that is PRIVILEGED and CONFIDENTIAL and/or may contain ATTORNEY WORK PRODUCT. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and its attachments, if any, and destroy any hard copies you may have created and notify me immediately.

**From:** Morrissey, Brian@Boston [mailto:Brian.Morrissey@AIG.com]
**Sent:** Friday, October 11, 2013 3:04 PM

Exhibit "A"

1